UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GORDON RICHARD HAMEL,<br>Plaintiff, | )<br>)<br>)<br>) |  |
| v. | )<br>) | CIVIL ACTION<br>NO. 18-40012-DHH |
| JENNIFER A. SIMMONS, et al.<br>Defendants. | )<br>)<br>)<br>)<br>) |  |

## ORDER

### November 13, 2018

This case is before the Court on Defendants' motion to dismiss for lack of jurisdiction and Plaintiff's motions for judgment on the pleadings and for a case management conference. (Docket ## 18, 22, 24). The parties have consented to my jurisdiction. (Docket # 21).

I. BACKGROUND

Although the allegations in the complaint do not clearly set out any particular cause of action, Hamel's claims appear to arise from the rejection of his application for employment with the Department of the Army. (Docket # 1). In his complaint, Hamel lays out a timeline of events as follows. (Id.). Hamel alleges that he is the founder and president of "American Voice for freedom [sic], a libertarian 501(c)(4)," that he is a resident of Philadelphia, Pennsylvania, and

1

that he is or was an employee of a Federal Protective Service contractor.[1]  (Id. at ¶¶ 1, 2).  Hamel reports that he applied for vacancy identification no. 1897205 with the United States Department of the Army ("DOA") on January 23, 2017.  (Id. at ¶ 3).  According to a posting by DOA, the position was for a security guard at Fort Devens Army Installation.  (See docket # 19-1 at pp. 1-2).  The job paid up to $45,995.  (Id.).  The job was subject to a number of conditions which an applicant must meet including "background checks and security clearance," proficiency with assigned firearms, passage of medical tests, and possession of a valid driver's license.[2]  (Id. at pp.3-6).

On July 24, 2017, Hamel contends that he filed a complaint against his employer with the Department of Homeland Security, Office of the Inspector General ("Whistleblower Complaint").[3]  (Id. at ¶ 4.).

Hamel states that on July 25, 2017 he was rated as qualified for the position with DOA and his application was referred for consideration.  (Id. at ¶ 5). Hamel claims that he was

---

[1] Hamel's complaint alleges that he is an employee of a federal protective service contractor in ¶ 1; yet in ¶ 6, Hamel states that his employment with the federal protective service contractor was terminated on July 27, 2017. Hamel does not provide the name of the federal protective service contractor.

[2] The job posting included the following list of "Conditions of Employment": Incumbent must be able to obtain and maintain a T3 level security clearance; Incumbent must be able to obtain and maintain state certification for operating the National Crime Information Center (NCIC) terminals; IAW AR 190-56, requirements of Individual Reliability Program apply; IAW AR 600-85, a DA Form 5019R Condition of Employment must be assigned for mandatory drug testing.  Drug testing designated position. Individual agrees to submit to a urinalysis on a recurring basis, in accordance with AR 600-85; Shift work is required, or a change in work shift may be necessary.  Hours of work encompass fluctuating tours of duty to include evenings, nights, weekends and holidays.  Overtime may be required as directed and is subject to recall for periods of emergency overtime; Incumbent must be proficient in the use of assigned firearms/weapons, pass an initial qualification, and must qualify semi-annually thereafter in the use of assigned firearms/weapons; Incumbent must undergo and pass annual medical exams of physical, emotional and mental stability; Incumbent must successfully complete security guard training; Incumbent must successfully complete CPR certification and First Aid training; Incumbent may be required to wear chemical protection masks, gloves, and other protective equipment, and may be required to be certified in the use of aerosol irritants and baton; Incumbent will be required to pass entry level and annual re-certification of standard Physical Agility Test (PAT); Incumbent must obtain and maintain a valid driver's license; Incumbent must wear prescribed uniform. (Docket # 19-1 at p 3).

[3] Hamel alleges that on July 27, 2017 his employment with the Federal Protective Service contractor was terminated. (Id. at ¶ 6).

tentatively selected for the DOA position on August 7, 2017, and that he accepted. (Id. at ¶ 7). On August 11, 2017, Hamel submitted copies to Human Resources at the Civilian Personnel Advisory Center of his Pennsylvania driver's license, U.S. passport, Pennsylvania license to carry firearms, and Pennsylvania Act 235 lethal weapons training certification card. (Id. at ¶ 8). Hamel contends that on October 31, 2017, Defendant Jennifer Simmons, the Director of the Civilian Personnel Advisory Center, withdrew the tentative job offer, explaining that it was withdrawn because Hamel's driver's license was suspended. (Id. at ¶ 9).

In his complaint, Hamel alleges that on November 7, 2017, the Director of the Bureau of Driver Licensing at the Pennsylvania Department of Transportation certified that there were no violations or departmental actions respecting his driver's license. (Id. at ¶ 10). On November 8, 2017, Hamel informed a human resources specialist at the Civilian Personnel Advisory Center that he would provide her with a certified copy of his driving record to prove that his license was not suspended. (Id. at ¶ 11). According to Hamel, the human resources specialist stated that she would consult with the Director of Emergency Services and get back to him. (Id.). Hamel alleges that she did not call him back. (Id.). On January 16, 2018, Hamel claims that the specialist informed him that a U.S. Army Garrison Devens Police Sergeant performed the license status query. (Id. at ¶ 12). Hamel complains that because DOA has failed to initiate his employment, he has suffered lost wages, lost compensation, humiliation, emotional distress, and loss of standing in his community. (Id. at ¶ 14).

Hamel filed his complaint on January 24, 2018 against Jennifer Simmons; Mark Esper, the Secretary of the Army; and James Mattis, Secretary of Defense. (Docket # 1). He filed for and was granted leave to proceed in forma pauperis. (Docket ## 3, 5). Defendants jointly moved the court to enlarge the time to file an answer on April 17, 2018. (Docket # 9). The

Court denied Defendants' motion to enlarge with leave to refile upon compliance with Local Rule 7.1(a)(2) or citation to authority excusing Defendants from compliance with Local Rule 7.1(a)(2). (Docket # 14). Defendants renewed their motion on May 11, 2018, including a Local Rule 7.1 Certification. (Docket # 15). The Court granted the motion that same day. (Docket # 16). On May 15, 2018, Defendants moved the Court to dismiss for lack of jurisdiction. (Docket #18). Hamel opposed the motion to dismiss on May 21, 2018. (Docket # 20). On July 20, 2018, Hamel moved the Court to set a case management conference. (Docket # 22). On September 4, 2018, Hamel filed a motion for judgment on the pleadings. (Docket # 24). Defendants filed an opposition to Hamel's motion for judgment on the pleadings on September 18, 2018 and a reply to Hamel's response to the motion to dismiss on September 27, 2018. (Docket ## 25, 26).

II. Motion to Dismiss

    A. Standard of Review

Jurisdiction concerns a court's authority to entertain and act upon a controversy before it. Rosario v. United States, 538 F. Supp. 2d 480, 486 (D. P.R. 2008). "Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case." Bonas v. Town of N. Smithfield, 265 F.3d 69, 73 (1st Cir. 2001); see U.S. Const. Art. III. This Court has "a responsibility to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). Because jurisdiction concerns a court's power to hear a case, a challenge to subject-matter jurisdiction may be raised at any time. Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016); Rosario, 538 F. Supp. 2d at 486; Kontrick v. Ryan, 540 U.S. 443, 124 S.Ct. 906 (2004); United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781 (2002).

In reviewing a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the Court must "construe the [c]omplaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Hajdusek v. United States, 895 F.3d 146, 148, (1st Cir. 2018) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). Nonetheless, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Jonson v. FDIC, 877 F.3d 52, 56 (1st Cir. 2017) (citing Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). Therefore, "an order granting a motion to dismiss at the pleading stage is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).

B. Analysis

Defendants apparently read the complaint to assert a claim for whistleblower protection against the DOA for rescinding Hamel's offer of employment. Defendants argue that because Hamel did not pursue his administrative remedies before the Office of Special Counsel ("OSC"), the Court does not have jurisdiction to hear any whistleblower claims asserted in Hamel's complaint. The Court agrees that in as much as Hamel is asserting protection as a whistleblower, the Court does not have jurisdiction to hear the case.

However, in Hamel's response to Defendant's motion to dismiss, Hamel expressly disclaims that his complaint seeks any relief under the Whistleblower Protection Act ("WPA"); indeed, Section 1 of his opposition is entitled, "Plaintiff did not file under the Whistleblower Protection Act." Rather, Hamel claims that his complaint asserts counts of "malicious defamation of character, interference with contractual relations, breach of contract, and violation of due process." (Docket # 20). In relevant part, Hamel's complaint alleges that: "[b]ecause of

5

defendant's action, I have suffered lost wages, lost compensation, humiliation, emotional distress, and loss of standing in my community." (Docket # 1). In his prayer for relief, Hamel asked the Court to grant:

1. All lost wages and lost compensation for ongoing GS-0085-05 employment.
2. $100,000 for humiliation, emotional distress, and loss of community standing.
3. $2,000,000 in punitive damages. Defendant is a trained professional and had more than enough personally identifiable information to verify my possession of a valid state drivers license, and defendant published the communication with knowledge that it was false or with reckless disregard of whether it was false or not.
4. Cost of filing suit.

(Id.). Despite this, it is not immediately apparent from Hamel's complaint what claims he has asserted. [4]

1. Violation of the Whistleblower Protection Act

Hamel's concession that his complaint does not allege protection as a whistleblower is enough to resolve Defendants' motion to dismiss for a failure to exhaust. Matalon v. City of Boston, No. 13-10001-GAO, 2014 WL 108407, at *1 (D. Mass. Jan. 8, 2014) ("[Plaintiff] concedes that Counts III, IV and V do not state viable claims against the City and should be dismissed. Accordingly, they will not be addressed further.") However, given Hamel's assertion that with respect to the WPA "[i]f information is discovered, Plaintiff will move appropriately," the Court addresses the exhaustion requirement as if the WPA claim had been made.

Most federal agency employees are protected from retaliation for reports concerning a violation of law, gross mismanagement, gross waste of funds, abuse of discretion, or conduct substantially endangering public safety pursuant to the Whistleblower Protection Act of 1989,

---

[4] As noted, Hamel asserts for the first time in his opposition to Defendants' motion to dismiss that he has brought claims of defamation, interference with a contractual relationship, breach of contract, and violation of due process. (Docket # 20). Unlike Hamel's claims for defamation and breach of contract that are supported by factual allegations in the complaint, the complaint does not include factual allegations to support claims of interference with a contractual relationship or violation of due process. (Docket # 1). Hence, the Court makes no determination whether or not jurisdiction supports such claims.

("WPA"). 5 U.S.C. § 2302(b)(8).[5] In order to sue in federal court for retaliation based upon reports of violation of law, gross mismanagement, gross waste of funds, an abuse of discretion, or conduct substantially endangering public safety, an employee must first exhaust the review process before the OSC. 5 U.S.C. § 1214(a)(3); Meuse v. Dep't of Veterans Affairs, No. 09CV11832-NG, 2010 WL 2302331, at *1 (D. Mass. June 8, 2010). The initial step in seeking administrative review of any claim of retaliation against a federal agency is to report the claim to the OSC. 5 U.S.C. § 2302(b)(8). If, after investigation, the OSC determines that there is merit to the applicant's claim, the OSC reports its finding to the Merit Systems Protection Board ("MSPB"), the agency involved, and to the Office of Personnel Management. 5 U.S.C. § 1214(b)(2)(B). The OSC may petition the MSPB for correction of the complained-of practice after a reasonable amount of time if the agency has not corrected it. 5 U.S.C. § 1214(b)(2)(C). If the OSC finds that no retaliation has occurred or if the applicant has not been notified that the OSC will seek corrective action within 120 days of the applicant's report to the OSC, an applicant may seek corrective action directly from the MSPB. 5 U.S.C. § 1214(a)(3). The applicant may appeal a finding of the MSPB to the United States Court of Appeals for the Federal Circuit, which has exclusive jurisdiction. 5 U.S.C. §§ 1214(c), 1221(h), 7703; 28 U.S.C. § 1295(a)(9); see also Meuse, 2010 WL 2302331 at *5.

Had Hamel sought court enforcement of whistleblower protections pursuant to the WPA, this Court would not have jurisdiction to hear his claim because Hamel did not exhaust

---

[5] These protections were extended to employees of federal contractors, subcontractors, and grantees through the National Defense Authorization Act of 2013 ("NDAA"). 41 U.S.C. § 4712(a). The NDAA creates for employees of federal contractors a parallel, yet distinct process of review from that outlined herein for applicants and employees of the federal government. Because Plaintiff's claims were brought against the Secretary of Defense, the Secretary of the Army and the Director of the Civilian Personnel Advisory Center, the Court presumes that if Hamel sought whistleblower protections, it would have been as an applicant for federal employment rather than as an employee of a Federal contractor.

administrative remedies.[6]  However, the Court takes Hamel at his word when he states in his opposition that he does not believe that he was rejected from the DOA position for the protected activity of making a report against his former employer.  (Docket # 20).[7]

    2. Defamation

Within Hamel's complaint, Hamel asks the Court to award him two-million dollars in punitive damages because "Defendant is a trained professional and had more than enough personally identifiable information to verify my possession of a valid state drivers [sic] license, and defendant published the communication with knowledge that it was false or with reckless disregard of whether it was false or not."  (Docket # 1).  Hamel's complaint may make oblique reference to defamation when he alleges publication and knowledge of falsity; however, neither the "communication" nor publication to which Hamel refers is clear to the Court.  Putting aside the failure to provide a plain, concise statement of the claims, see Fed. R. Civ. P. 8, as Defendants' opposition to Plaintiff's motion for judgment on the pleadings argues, Plaintiff's defamation claim is subject to dismissal for lack of jurisdiction.  (See docket # 25).

According to the Westfall Act, a federal employee is absolutely immune from state-law tort claims, such as defamation or interference with a contractual relationship, where that employee was acting within the scope of his or her employment.  28 U.S.C. § 2679(b)(1).  Stated another way, where an employee commits a "negligent or wrongful act or omission" in conduct connected to his or her employment, the employee may not be held liable.  Id.; Day v.

---

[6] Yet even if Hamel had exhausted his administrative remedies, further review was within the exclusive jurisdiction of the Federal Circuit Court of Appeal, not the District Court.  See Meuse, 2010 WL 2302331 at *5.  "Under no circumstances does the WPA grant a district court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."  Id. (citing Hendrix v. Snow, 170 F. App'x 68, 78-79 (11th Cir. 2006); Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002); Ghaly v. U.S. Dep't of Agric., 228 F. Supp. 2d 283, 288-89 (S.D.N.Y. 2002)).

[7] The Court would entertain a motion by Defendants to strike paragraph four from the complaint as surplusage.

Massachusetts Air Nat'l Guard, 167 F.3d 678, 685 (1st Cir. 1999). In a case, such as the one before the Court, where state-law tort claims are brought against a federal employee acting within the scope of his or her employment, the United States is substituted for the federal employee defendant. 28 U.S.C. § 2679(b)(2).

However, in accordance with the Federal Tort Claims Act ("FTCA"), the United States is also immune from defamation actions. 28 U.S.C. § 2680(h); Aversa v. United States, 99 F.3d 1202, 1209 (1st Cir. 1996). While the United States waives much of its sovereign immunity in the FTCA, it excepts from that waiver immunity from certain tort claims, including defamation and intentional interference with contractual relations. Id. As a result, the Court does not have jurisdiction over a defamation claim against the United States. Id. Therefore, even though the United States would succeed the individual federal employees as Defendant upon certification by the Attorney General or the Court that the employees acted outside the scope of employment, see 28 U.S.C. § 2679, the case cannot go forward against the United States.

Accordingly, Hamel has met his burden to establish jurisdiction, Jonson, 877 F.3d at 56, only if the complaint articulates facts that the Defendants acted outside of the scope of their employment and therefore are not immune from suit pursuant to the Westfall Act. Hamel has not pleaded facts that any of the three named Defendants acted outside of the scope of their employment. (See docket # 1). Nor are there allegations from which such an inference can fairly be drawn. The sole allegation regarding Defendant Simmons is that she is the Director of the of the Civil Personnel Advisory Center and in that capacity withdrew the tentative job offer. (See id. at ¶ 9).[8] There are no specific allegations against Defendant Esper or Defendant Mattis.

---

[8] The only other individual against whom Hamel alleged specific facts is the human resources specialist who conveyed the tentative offer to Hamel, and spoke with him over the phone on two other occasions subsequent to the offer's withdrawal. (See id. ¶¶ 7, 11, 12).

9

(See docket # 1). Without any suggestion that the actions of the employees exceeded the scope of their employment, the Court does not have subject-matter jurisdiction. Therefore, the Court dismisses any claim Hamel may have alleged for defamation.

        3. Breach of Contract

The complaint may fairly be read to assert a claim for breach of contract. (See docket # 1). Defendants have not presented the Court with argument supporting a dismissal of Hamel's breach of contract claim for lack of subject-matter jurisdiction. Plaintiff alleges that the parties are diverse and that the amount in controversy exceeds the jurisdictional threshold. (Docket # 1). Accordingly, the Court denies Defendants' motion to dismiss for lack of subject-matter jurisdiction with respect to Hamel's claim of breach of contract. The Court may revisit its finding of subject-matter jurisdiction at any time. See Hochendoner, 823 F.3d at 730 Rosario, 538 F. Supp. 2d at 486; Kontrick, 540 U.S. 443; Cotton, 535 U.S. 625.

   III.    Motion for Judgment on the Pleadings

Hamel has moved the Court for judgment on the pleadings. At this point, Hamel's only survivng claim is for breach of contract. The Defamation claim has been dismissed for lack of subject-matter jurisdiction and, as noted, whatever other claims Hamel believes his complaint alleges are neither supported nor apparent. Thus, the Court considers Hamel's motion only as it pertains to his claim for breach of contract.

      A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." A court reviews motions for judgment on the pleadings under a standard that is essentially the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), except that "[a] Rule 12(c)

motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006). Facts contained in the pleadings are viewed in the light most favorable to the nonmovant (here, the Defendants), and all reasonable inferences are drawn in their favor. Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007). In reviewing a motion under Rule 12(c), the court may consider "documents the authenticity of which are not disputed by the parties; documents central to the plaintiff's claim; and documents sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)) (alterations omitted). "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" Zipperer, 493 F.3d at 53 (quoting Aponte-Torres, 445 F.3d at 54).

B. Analysis

Under Massachusetts law, a valid contract requires the following essential elements: (i) an offer; (ii) acceptance; and (iii) consideration. Conte v. Bank of Am., N.A., 52 F. Supp. 265, 268 (D. Mass. 2014). In order to prevail on a breach of contract theory, a plaintiff must demonstrate that: (i) the parties entered into a valid and binding agreement; (ii) the defendant breached the terms of the parties' binding agreement; and (iii) the plaintiff suffered damages as a result of the defendant's breach. Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007); Shri Gayatri, LLC v. Days Inns Worldwide, Inc., 15-cv-40104-TSH, 2018 WL 1542376, at *4 (D. Mass. Mar. 28, 2018) (Hillman, J.). Where an offer is subject to a condition, performance is not due until that condition is met. Restatement (Second) of Contracts, § 224 (Am. Law Inst. 1981) ("A condition is an event, not certain to occur, which must occur, unless

its non-occurrence is excused, before performance under a contract becomes due."); See Lynch v. Dep't of the Army, 245 F. App'x 13, 15 (Fed. Cir. 2007).

Hamel alleges that he was "tentatively selected for the position" with DOA and that he "accepted the offer." (Docket # 1, ¶ 7). Thereafter, apparently to facilitate the required background check and security clearance, Hamel submitted copies of his Pennsylvania driver's license, U.S. passport, Pennsylvania license to carry firearms, and Pennsylvania Act 235 lethal weapons training certification card. (Id. at ¶ 8). He alleges that Defendant Simmons withdrew the offer because the background check indicated that his driver's license was suspended. (Id. at ¶ 9). Hamel filed with the complaint a letter from Simmons dated October 31, 2017 stating that "[o]ne of the pre-employment requirements that you were required to pass was possession of a valid state driver's license, which is a condition of employment. A records check indicated that you currently have a suspended driver's license." (Docket # 1, 1-2, p. 3). The letter concludes: "Due to the unfavorable information received, the tentative job offer is being withdrawn." (Id.). Presumably, "the unfavorable information received" refers to the suspended driver's license. Hamel alleges that his driver's license was not suspended. (Docket # 1, ¶ 10). I find Hamel has failed to conclusively establish entitlement to a favorable judgment.

Although the uncontested evidence shows that DOA extended Hamel a job offer, that same evidence shows, and Hamel concedes, that the offer was "tentative." "Tentative" is defined as "something that is uncertain or subject to change." Tentative, MERRIAM-WEBSTER DICTIONARY (2018). In the context of this case, the best reading of "tentative", and one that is viewed in the light most favorable to the Defendants as the nonmoving party, is that the offer was subject to the required background check and security clearance.

Moreover, this interpretation is plainly consistent with the record. After Hamel accepted the tentative offer, he alleges that he submitted to DOA documents such as his U.S. Passport, firearms license and driver's license which addressed conditions Hamel was required to satisfy. Ultimately, the offer was "withdrawn" based upon a determination that Hamel did not have a valid driver's license. Even if, as Hamel alleges, this determination was erroneous, he has nevertheless failed to show that he otherwise passed the background check and security clearance and hence was entitled to employment. See Scheidel v. United States, 497 F. App'x 997, 999 (Fed. Cir. 2012) ("The Claims Court correctly found that a federal employment applicant's acceptance of a 'tentative' job offer pending the results of a security screening does not give rise to an enforceable contract."). Accordingly, Hamel has not produced sufficient evidence or uncontested facts to "conclusively establish the movant's entitlement to a favorable judgment." Therefore, the motion for judgment on the pleadings is denied.

IV.     Motion for Case Management Conference

Because Hamel's claim for breach of contract remains, the Court grants Hamel's motion for conference with the Court in the form of a scheduling conference. The Court will set a scheduling conference pursuant to Local Rule 16.1(a).

V.     CONCLUSION

Defendants' motion to dismiss (Docket # 18) is GRANTED with respect to claims for whistleblower protection and defamation. Defendants' motion to dismiss (Docket # 18) is DENIED with respect to Hamel's claim of breach of contract.

Hamel's motion for judgment (Docket # 24) on the pleadings is DENIED.

Hamel's motion for case management conference (Docket # 22) is GRANTED in the form of a scheduling conference.

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE